## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

     Plaintiff,

          v.

MARK CLUCIS (a/k/a Mark Cluci, Marius
Cluci, Mihai Cluci, Marius Mihai Cluci, Mihai
Marius Cluci, d/b/a MMC Construction,
MMC Construction, LLC, and/or Mihai M.
Cluci Construction); MMC CONSTRUCTION,
L.L.C.; MMC CONSTRUCTION, LLC; and
MM COMPANY, INC.;

     Defendants.

Civil Action No.
1:20-cv-00276-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiff Travelers Property Casualty

Company of America's (Travelers) summary judgment motion [ECF 79] and

Defendants Mark Clucis, MM Company, Inc. (the INC), and MMC Construction,

L.L.C.'s (the LLC) (collectively, Defendants) cross-motion for summary judgment

[ECF 80]. After careful evaluation of the briefs, and with the benefit of oral

argument, Travelers' summary judgment motion [ECF 79] is **GRANTED**, and

Defendants' cross-motion for summary judgment [ECF 80] is **DENIED**.

## I.    Background[1]

The following facts are agreed unless otherwise noted. This is a breach of contract and alter ego liability action arising from an admitted failure to pay outstanding premiums owed to Travelers pursuant to an assigned risk workers' compensation policy it issued to Clucis and, later, the LLC.[2]

### A.    The 2016 and 2017 Policies and the Policy Declarations

In April 2015, Clucis, doing business as MMC Construction, applied for a workers' compensation insurance policy from the assigned risk market.[3] The application represented that MMC Construction was a sole proprietorship, with Clucis owning 100 percent of the business.[4] The application also represented that MMC Construction had one employee with an estimated annual renumeration

---

[1]    On cross-motions for summary judgment, the Court views the facts "in the light most favorable to the non-moving party on each motion." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021). The Court accepts as admitted any facts set forth in the parties' Statements of Undisputed Material Facts supported by evidence that the opposing party did not "***specifically controvert***[ ] with a citation" to record evidence. *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444, 2019 WL 10886802, at *1 n.2 (N.D. Ga. Mar. 28, 2019) (emphasis added).

[2]    ECF 88-7, ¶¶ 1, 6–7, 14–16; *see also* ECF 90, ¶ 5 (explaining that Clucis d/b/a MMC Construction was initially insured until a July 9, 2015 change request was approved and the LLC was substituted as the insured).

[3]    *Id.* ¶ 1.

[4]    *Id.* ¶ 2.

payroll of $15,000, and that MMC Construction did not use subcontractors or sublet work without certificates of insurance.[5] Travelers approved the application and issued a policy to Clucis (later substituted with the LLC) for the period of April 26, 2015 to April 26, 2016 (the 2016 Policy), which was later renewed until April 26, 2017 (the 2017 Policy).[6]

In pertinent part, the 2016 and 2017 Policies outlined the criteria by which Travelers would calculate the premiums (the Policy Declarations). The Policy Declarations provided that "[t]he premium . . . [would] be determined by [the] Manual of Rules, Classifications, Rates and Rating Plans," and that all required information would be subject to an annual audit.[7] They also provided that "[t]he final premium [would] be determined after [each] policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by [each] policy," and that Travelers would "audit all . . . records related to this policy . . . to determine [the] final premium."[8] "If the final premium is more than the premium . . . paid to

---

[5]   *Id.* ¶¶ 3–4.

[6]   *Id.* ¶¶ 6–7; ECF 90, ¶ 3.

[7]   ECF 88-7, ¶ 8.

[8]   *Id.* ¶ 9.

[Travelers]," then the insured would be responsible for paying Travelers the balance.[9]

### B.    The Audits

The parties agree that Travelers performed audits of the 2016 and 2017 Policies as mandated by the Policy Declarations, though they dispute what was provided to and considered by Travelers as part of these audits, as well as the extent to which the LLC cooperated with these audits.[10] As explained below, these disputes are immaterial to the question of Travelers' contract liability, and merely provide helpful context for the Court's analysis.[11]

### 1.    The Pre-Discovery Audit

Before Travelers filed this lawsuit, it conducted initial audits of the 2016 and 2017 Policies (the Pre-Discovery Audit). Travelers first calculated that it was owed a premium balance of $878,741 for the 2016 Policy, and $205,619 for the 2017 Policy, totaling $1,084,360.[12] These premiums were due to Travelers on November 14, 2017, and November 4, 2017, respectively.[13] However, neither the LLC nor Clucis

---

[9]    *Id.*

[10]    *Id.* ¶¶ 10–11.

[11]    *See infra* Section II.A.1.

[12]    ECF 88-7, ¶ 14.

[13]    *Id.* ¶ 15.

made any payment toward the total sum calculated in the Pre-Discovery Audit because Clucis did not think the premiums were correctly calculated.[14] Specifically, Defendants maintain that Clucis supplied Travelers with sub-contractors' workers' compensation certificates, which he contends should have resulted in discounted premiums.[15] However, no such certificates are part of the record in this case, and Defendants admit that they have not performed any of their own calculations to contradict Travelers' Pre-Discovery Audit.[16]

When Travelers perceived Clucis's documentation and efforts to comply with the Pre-Discovery Audit to be lacking, Travelers issued a notice of noncooperation on June 22, 2017, and, eventually, a notice of cancellation on June 23, effective July 13.[17]

### 2.    The Post-Discovery Audits and the Final Premium

During discovery, Defendants produced eleven 2016 IRS Form 1099s issued by the LLC totaling $4,038,586; a 2016 IRS Form 1040 reporting $0 in purchases above a line item for $4,038,586 in labor costs; and bank records showing hundreds

---

[14]  *Id.* ¶¶ 16–17.

[15]  *Id.*

[16]  *Id.* ¶ 18.

[17]  ECF 81, ¶ 15.

of payments to workers.[18] The parties dispute the extent to which these documents contradict the versions provided to Travelers pre-suit,[19] but Travelers believes the materials were at odds with the LLC's insurance application. Travelers asserts that the pre-discovery versions were altered to conceal payments to workers and suppress premiums.[20] Defendants maintain that they are not familiar with the pre-discovery versions of the disputed documents, and are unaware of how Travelers would have obtained the allegedly falsified records prior to this litigation.[21] The parties likewise dispute the authenticity of the allegedly altered bank records, contracts, and tax forms Travelers had in its possession pre-suit.[22]

Based on its perception that the Pre-Discovery Audit was premised on inaccurate and incomplete documentation, which it attributes to Defendants' failure to fully cooperate with that audit, Travelers conducted a revised audit of the 2016 and 2017 Policies on July 22, 2021 (the Second Audit).[23] Accounting for

---

[18]  ECF 88-7, ¶ 20.

[19]  *Id.* ¶ 21.

[20]  *Id.* ¶ 22.

[21]  *Id.*

[22]  *Id.* ¶ 23.

[23]  ECF 81, ¶¶ 12, 15–17. *See also* ECF 81-21 (Revised Audits for 2016 and 2017 Policies).

the information Travelers obtained during discovery, the Second Audit results showed that the LLC owed $1,443,928 for the 2016 Policy and $488,914 for the 2017 Policy.[24] Adjusting for the premium basis and the proper classifications and rates that lawfully applied to the business and work covered under the 2016 and 2017 Policies as required by the Policy Declarations, Travelers processed its revised final audit for the 2016 and 2017 Policies (the Final Audit).[25] The Final Audit resulted in $1,511,359 in earned premium due to Travelers for the 2016 Policy[26] and $521,339 in earned premium due to Travelers for the 2017 Policy.[27] Based on the LLC's prior premiums paid for the 2016 and 2017 Policies, which amounted to $21,382, Travelers claims that the LLC owes it $2,011,316 (the Final Premium).[28] These results, along with Travelers' methodology, are documented in a declaration (the Second Declaration) prepared by Mark Mocadlo, Travelers' Director of Residual Markets.[29]

---

[24]   ECF 88-7, ¶ 24 (citing ECF 81-21).

[25]   *Id.* ¶¶ 26–27.

[26]   *Id.* ¶ 26; *see also* ECF 81-25 (2016 Policy Revised Final Premium Audit).

[27]   ECF 88-7, ¶ 27; *see also* ECF 81-26 (2017 Policy Revised Final Premium Audit).

[28]   ECF 88-7, ¶ 28.

[29]   ECF 81.

Defendants dispute the Final Audit's results, but neither present affirmative evidence of countervailing facts nor provide any alternative calculation to refute the Final Premium, let alone the results of the Pre-Discovery Audit or the Second Audit.

### C.    Clucis's Business Entities

During the periods of coverage under the 2016 and 2017 Policies, Clucis admits to having formed or operated multiple construction companies, using various monikers.[30] These include the LLC, which Clucis registered on March 9, 2011 and terminated on January 9, 2017; MMC Construction, LLC, which he registered on April 19, 2017 and terminated on June 22, 2017; and MM Company, Inc., which he registered on January 3, 2017 and was active at the time the Complaint was filed in this case.[31] Clucis testified at deposition that the LLC and MMC Construction, LLC are the same entity, and attributed the different names to a typographical error.[32] Accordingly, for the remainder of this Order the Court refers to both as "the LLC."

---

[30]   ECF 88-7, ¶ 29.

[31]   *Id.*

[32]   *Id.* ¶ 31. Defense counsel represented the same to the Court at the August 1, 2022 oral argument on the cross-motions for summary judgment, and conceded that the two entities were alter egos.

The parties dispute whether Clucis switched his construction business operations from the LLC to the INC, which Travelers insists has also done business as "MMC Construction" and "Mark Clucis d/b/a MMC Construction."[33] Clucis admittedly started the INC to generate income and "keep working" because he could not get insurance through the LLC.[34] However, Clucis also acknowledges that he acted on behalf of the LLC on August 10, 2017, after it had been terminated and its insurance had been cancelled.[35] Furthermore, Clucis admits that the LLC and the INC performed similar scopes of work and shared some of the same subcontractors.[36] Clucis testified at deposition that he did not know when the business he was conducting switched from the LLC's affairs to the INC's, he "just did not care about paperwork" and did not keep or maintain records regarding business operations, and he occasionally paid workers in cash from his personal accounts.[37]

---

[33]  *Id.* ¶ 32.

[34]  *Id.* ¶ 33.

[35]  *Id.* ¶ 35.

[36]  *Id.* ¶ 36.

[37]  *Id.* ¶ 39.

Throughout 2016 and 2017, Clucis made business payments on behalf of the LLC from his personal bank account.[38] He also deposited checks into his personal account from business accounts, and paid his personal home mortgage, utilities bills, and for vacations and airfare from business accounts.[39] Clucis used his business account credit cards for personal transactions, paid business expenses (*e.g.*, workers' wages and insurance premiums) from his personal accounts, and paid off his personal credit cards—which he used for personal and business expenses—from business accounts.[40] Further, in 2017, Clucis transferred $3,000,000 from the LLC's bank account to the INC's account,[41] and purchased a personal residence for $500,000 with funds from the LLC's accounts.[42] Defendants call these transfers "loans" and insist they were documented by IRS Form 1099s.[43] Those 1099s are not record evidence in this case. As of the time of his deposition on July 21, 2021, Clucis admittedly still used the LLC's Visa Card for personal and

---

[38]   *Id.* ¶ 42.

[39]   *Id.* ¶ 44.

[40]   *Id.*

[41]   *Id.* ¶ 40.

[42]   *Id.* ¶ 47.

[43]   *Id.* ¶ 41.

business expenses,[44] and he testified, "I treated the LLC as a—as me."[45] The LLC

is now insolvent.[46]

### D.   Procedural History

Travelers filed the initial complaint in this case on January 1, 2020.[47] On

February 26, Defendants moved to dismiss,[48] and, on March 18, Travelers filed its

First Amended Complaint.[49] In the First Amended Complaint, Travelers asserts

three claims: (1) breach of contract against the LLC, (2) alter ego liability against

all Defendants, and, alternatively, (3) unjust enrichment against all Defendants.[50]

On September 14, 2021, Travelers filed its summary judgment motion and

the Second Declaration;[51] Defendants filed a cross-motion for summary judgment

---

[44]   *Id.* ¶ 45.

[45]   *Id.* ¶ 43.

[46]   *Id.* ¶ 38.

[47]   ECF 1.

[48]   ECF 14.

[49]   ECF 18.

[50]   *See generally id.* In their summary judgment motion, Defendants argue that the equitable claims for alter ego liability and unjust enrichment are not pled in the alternative. ECF 80-1, at 9. The alter ego claim is clearly aimed at equitable relief due to the LLC's insolvency, ECF 18, ¶ 65, and need not be pled in the alternative for the reasons discussed below. *See infra* Section II.B.1. With respect to the unjust enrichment claim, this is plainly incorrect. ECF 18, at 19.

[51]   ECF 79; ECF 81.

that same day.[52] The Court heard oral argument on the parties' summary judgment motions on August 1, 2022.[53]

## II.    Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The evidence, and any justifiable inferences drawn therefrom, should be construed in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and adduce affirmative evidence to show a genuine dispute of material fact exists. *Anderson*, 447 U.S. at 257. "A mere 'scintilla' of evidence . . . will not suffice; there must be a sufficient showing that the jury could reasonably find for [the non-movant]." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

---

[52]   ECF 80.

[53]   ECF 96.

Travelers move for summary judgment as to its breach of contract and alter ego liability claims. Defendants cross-move for summary judgment as to the alter ego and unjust enrichment claims. For the reasons that follow, Travelers' summary judgment motion is granted, and Defendants' cross-motion for summary judgment is denied. The Court discusses the disposition of each of Travelers' claims as follows.

## A.     Breach of Contract Against the LLC

### 1.     Liability

Travelers moves for summary judgment on its breach of contract claim against the LLC, asserting that the LLC breached the 2016 and 2017 Policies by failing to cooperate fully with mandatory audits and for failing to pay the premiums owed to Travelers.[54] However, at oral argument, counsel for Travelers clarified that the extent to which the LLC cooperated with its Pre-Discovery Audits is merely "background," and not material to the calculation of damages—*i.e.*, the outstanding premiums it alleges the LLC owes under the 2016 and 2017 Policies as calculated in the Final Audit. Further, Travelers conceded at oral argument that the Second Declaration, which contains the revised Final Premium, does not account for the non-cooperation penalty related to the LLC's alleged failure to

---

[54]   ECF 79-1, at 12–18.

cooperate with the Pre-Discovery Audit. In short, Travelers abandoned its "failure to cooperate" argument; the only theory of contract liability at play is the LLC's admitted failure to pay the premiums owed to Travelers.

Defendants do not appear to cross-move for summary judgment as to the LLC's contract liability. Instead, they argue in their summary judgment brief that the LLC is the only party that contracted with Travelers, and is therefore the only party that can be liable for breach of the 2016 and 2017 Policies at law.[55] Travelers concedes as much, but attempts to hold the INC and Clucis liable in equity under a theory of alter ego liability. For this reason, Defendants' summary judgment motion is denied to the extent it addresses the merits of Travelers' breach of contract claim itself.

Defendants also make an effort to push Travelers' claim to a trial. In their response brief, Defendants primarily argue that Travelers' breach of contract claim cannot be premised upon any alleged fraud regarding the LLC's compliance with the Pre-Discovery Audits.[56] Because Travelers has abandoned that theory of liability, Defendants' arguments on this point are not of any practical significance and are disregarded. Defendants further argue that there are "serious doubt[s]

---

[55]   ECF 80-1, at 9.

[56]   ECF 88, at 2.

about the accuracy" of Travelers' damages calculation that preclude summary judgment.[57]

Under Georgia law,[58] "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). Defendants admit to Travelers' allegations supported by evidence for each of these elements, entitling Travelers to summary judgment as to the LLC's liability for breach of the 2016 and 2017 Policies as a matter of law.

First, in an effort to win summary judgment on Travelers' alternative unjust enrichment claims, Defendants concede that "there was a [valid] contract for workers' compensation insurance between [Travelers] and [the LLC]."[59] Second, Defendants freely admit that the premiums owed to Travelers under the 2016 and

---

[57]   ECF 88, at 11–13.

[58]   Travelers argues, and Defendants do not contest, that Georgia law applies to the insurance contracts underpinning the 2016 and 2017 Policies. The Court agrees. Because the Court's subject matter jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Georgia to evaluate Travelers' breach of contract claim. *Boardman Petro., Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).

[59]   ECF 80-1, at 16.

2017 Policies have not been paid.[60] Third, while they dispute Travelers' damages calculation resulting from the Final Audit, Defendants do not dispute that damages arose from its failure to pay any portion of the Final Premium.[61] Accordingly, Travelers' summary judgment motion is granted as to the LLC's liability for breach of the 2016 and 2017 Policies.

### 2.   Damages

As for Defendants' contention that Travelers' Final Audit calculation is incorrect, Defendants argue three somewhat duplicative points in disputing the Final Premium as detailed in the Second Declaration: (1) Mocadlo testified at deposition that his Post-Discovery Audit calculations did not include "an actual final amount," and that the premium owed to Travelers could be higher or lower; (2) Mocadlo indicated at deposition that the Post-Discovery Audit calculations did not account for deductions to which the LLC is entitled, such as deductions for subcontractors with their own workers' compensation policies; and (3) Mocadlo relied on "inadmissible summary information" provided by Travelers' counsel to revise the premium calculations, and, unlike the assigned risk carrier in *LM Ins.*

---

[60]   ECF 88-7, ¶¶ 16–17 ("Defendants admit the premium amount has not been paid.").

[61]   *Id.* ¶ 26.

*Corp. v. E. Corp.*, No. 1:19-CV-00913-AT, 2019 WL 9633375 (N.D. Ga. Oct. 31, 2019), Travelers failed to sufficiently detail the "analysis of the calculations of the insurance premium to justify a damages award."[62] Travelers avers that Defendants' arguments focus on immaterial facts or misstate the record evidence; are "fundamentally flawed because they ignore the [F]inal [A]udit" and rely on Mocadlo's deposition testimony, which predates the Second Declaration; and mischaracterize *LM Insurance Corp.*[63]

First, Defense counsel's deposition colloquy with Mocadlo pertains to the unadjusted Second Premium, and is not at odds with the Policy Declarations or Travelers' Final Audit resulting in the Final Premium. The Final Premium was based on renumeration and other basis adjustments per the Policy Declarations. Defendants do not argue that the documents provided during discovery were less complete or accurate than the documents Travelers relied on in the Pre-Discovery Audit for purposes of calculating the premium owed, or that the work classification adjustments applied in the Final Audit are somehow inaccurate. Instead, Defendants focus on Mocadlo's deposition testimony, which predates Travelers' Final Audit and the Second Declaration. In other words, Mocadlo's

---

[62]   ECF 88, at 12–13.

[63]   ECF 93, at 7.

deposition testimony was not that the Final Premium is not "an actual final amount" owed to Travelers, but rather that the unadjusted Second Premium was subject to change.

Second, in arguing that the Final Audit calculations did not account for premium deductions to which the LLC is entitled, Defendants again ignore the Second Declaration. The Second Declaration explains that the Final Premium includes credit for the $21,382 the LLC paid in premiums, which were not accounted for in the Second Audit, and the exposure basis does not include payments made to four subcontractors for whom the LLC furnished proof of insurance.[64]

Defendants also claim that the LLC provided its only copies of certain subcontractors' insurance certificates to Travelers prior to this litigation, and that they cannot verify whether Travelers credited the LLC for those certificates as part of the Final Premium.[65] However, Defense counsel's representation to the Court on this point mischaracterizes Clucis's deposition testimony and borders on invention. At his deposition, Clucis was specifically asked about these certificates and testified, "I don't think I have them. I can try to get them. . . . Normally these

---

[64]   ECF 81, ¶ 31; ECF 88-7, ¶ 28.

[65]   ECF 88, at 11.

certificates, whenever I had an audit from Travelers . . . I give them a copy of the certificates. But it looks like I did a bad job and I didn't keep them for this."[66]

That the LLC might have had these documents at one time is immaterial if it did not and cannot produce them in connection with this litigation. It was the LLC's responsibility under the Policy Declarations and Georgia law to provide these certificates to Travelers, and its failure to do so is fatal to Defendants' second argument against summary judgment.[67] *See Wright Associates, Inc. v. Reider*, 247 Ga. 496, 499 (1981) ("The purpose of [O.C.G.A. § 34-9-8] is to ensure that employees in construction and other industries are covered by workers' compensation. In order to do so, it places an increased burden, in the form of potential liability for workers' compensation benefits, on the statutory employer."). Defendants have not accurately pointed to any record evidence suggesting that they provided Travelers with these certificates, or that Travelers failed to account for the certificates if it indeed had copies of them.

Third, Defendants' reliance on *LM Insurance Corp.* is misplaced. That case was before the district court on a motion for default judgment, and is inapposite

---

[66]   ECF 82, at 93:16–93:19.

[67]   *See* 88-7, ¶ 9 (explaining that the LLC was responsible for providing records that would inform the audit, which, in turn, would allow Travelers to calculate the Final Premium).

on that basis alone. 2019 WL 9633375, at *5. Nevertheless, Defendants rely on that case as an example of the sort of information—including the insured's payroll information, workers' insurance policies, material purchases, contracts for work to determine what percentage of the contract fee related to labor costs, and more—that is supposedly lacking from the Final Audit in this case.[68]

Contrary to Defendants' argument, however, the Second Declaration thoroughly explains how Travelers calculated the additional sums owed by the LLC, including the Final Audit results, the formula for calculating the Final Premium, the pertinent classification codes and rates, and Travelers' application of the formula based on "the information available to it," as in *LM Insurance Corp. See id.* (noting that the auditor's calculations reflected its "best determination of the various factors using the information available to it" only "where the records reflected [it]"). Defendants do not meaningfully grapple with the Final Audit's methodology, except to say some variables the auditor considered in *LM Insurance Corp.* were not considered here. Neither that case nor any other cited by the parties sets out specific criteria that *must* be considered in an insurance audit. Those criteria are set forth in the Policy Declarations as a matter of contract law, and

---

[68]   ECF 88, at 12.

Defendants do not argue that Travelers' audit veered from the Policy Declarations. *See Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111 (2012) (cleaned up) (Under Georgia law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms.").

Moreover, Defendants' "summary evidence" argument misstates Mocadlo's deposition testimony. Mocadlo did not testify that Travelers relied on summary information to conduct the Final Audit, as Defendants seem to suggest.[69] Rather, Mocadlo testified that he was not certain whether Travelers reviewed *both* summaries and itemized lists of the LLC's check registers reflecting payments made to workers employed by the LLC as part of the Second Audit.[70] At any rate, this testimony is immaterial considering the Second Declaration, which clarifies which records Travelers relied on in its Final Audit.[71]

At bottom, the Second Declaration and the Final Premium are unrefuted, and Defendants have failed to support their arguments that the Final Premium was improperly calculated. Therefore, the Court considers the Final Premium undisputed for the purposes of the parties' motions. Fed. R. Civ. P. 56(e)(2).

---

[69]   *See* ECF 94, ¶ 13.

[70]   ECF 80-3, at 16 ("No. I think it was – it was both summary and the itemized.").

[71]   ECF 81, ¶¶ 17–31; ECF 81-16, at 230, 232.

Travelers' motion for summary judgment is granted as to damages for the LLC's breach of contract. *Id.* 56(e)(3). Defendants' summary judgment motion is denied. Travelers is entitled to recover the Final Premium, $2,011,316, from the LLC as a matter of law.

## B.   Alter Ego Liability Against All Defendants

Travelers also moves for summary judgment on its claim that the corporate veils of the LLC and the INC should be pierced, and that it should be allowed to collect contract damages from Clucis and the INC, because of the now-insolvent LLC's liability in contract. Specifically, Travelers argues that the undisputed material facts demonstrate that Clucis treated his various businesses as alter egos of himself and each other, and that Clucis shifted his construction business operations and finances to the INC to avoid liability for the LLC's breach of contract.[72] Defendants cross-move for summary judgment, arguing that the alter ego claim is not pled as an alternative claim to Travelers' breach of contract cause of action and therefore fails as a matter of law.[73] Defendants also contend that the record evidence does not show "such a unity of interest" among the LLC, Clucis,

---

[72]   ECF 79-1, at 18.

[73]   ECF 80-1, at 9.

and the INC to establish that they are alter egos as a matter of law,[74] or that the LLC is insolvent such that Travelers has a claim in equity to recover from any other entity for the LLC's liability in contract.[75]

## 1.   Legal Standard

That corporations are legal entities distinct from their shareholders, directors, officers, and employees is a foundational principal of corporate law. *Dep't of Transp. v. McMeans*, 294 Ga. 436, 437 (2014). This is no less true when a corporation is wholly owned by a single individual. *Id.* Nor is this principle "altered by the fact that the sole owner uses and controls the corporation to promote the owner's ends." *Id.* Because incorporation exists to "shiel[d] individual shareholders and members from personal liability for the acts of the corporation," courts should exercise "great caution . . . in disregarding the corporate entity." *Id.*

Even so, Georgia courts will disregard the corporate form and pierce its veil if "a corporation is a mere alter ego or business conduit of a person"[76] and the

---

[74]   *Id.* at 10.

[75]   *Id.* at 13–14.

[76]   Georgia courts do not appear to distinguish between "piercing the corporate veil," which suggests one entity is vicariously liable for the debts of another entity by virtue of the exercise of control, and "alter ego," which implies that two or more entities are one and the same and should be treated as such for purposes of imposing liability. For purposes of this case it is a distinction without a difference.

corporate form was "used as a subterfuge so that to observe it would work an injustice." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005) (citation omitted). To pierce the corporate veil, the plaintiff must show that the shareholders "made [the entity] a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Id.* (citation omitted). This generally requires the plaintiff to adduce evidence of fraud, abuse of the corporate form, commingling of assets, or corporate insolvency at the time of the transaction. *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014) (citing *Amason v. Whitehead*, 186 Ga. App. 320, 322 (1988)).

The alter ego claim is an equitable one, and, as Defendants correctly note, it cannot be sustained unless there is an inadequate remedy at law. *Baillie Lumber Co.*, 279 Ga. at 290. Thus, insolvency, "in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim" is a "precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim." *Johnson v. Lipton*, 254 Ga. 326, 327 (1985).

It also requires a fact-intensive inquiry. Courts in this district interpreting Georgia law have recognized that the alter ego question should ordinarily be decided by a jury. *Brown v. Advantage Eng'g, Inc.*, 732 F. Supp. 1163, 1167 (N.D. Ga.

1990) (citing *Najran Co. v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096 (S.D. Ga. 1986)). Accordingly, an alter ego claim may be decided at summary judgment only if the movant proves that "no reasonable jury" could find corporate separateness. *Brown*, 732 F. Supp. at 1167. *Accord Najran Co.*, 659 F. Supp. at 1097 n. 6 (quoting *Anderson*, 477 U.S. at 251 ("[T]he 'genuine issue' summary judgment standard is 'very close' to the 'reasonable jury' directed verdict standard.")).

### 2.    Discussion

The Court first notes that, contrary to their representation,[77] Defendants admitted that "[t]he LLC does not have any funds and is now insolvent."[78] *Johnson*, 254 Ga. at 327. Considering this fact, the Court finds that Travelers has no adequate remedy at law against the LLC, even though the LLC's liability has been determined. *Baillie Lumber Co.*, 279 Ga. at 290. Moreover, there is no dispute that Clucis was the sole member of the LLC and the INC, satisfying the Court that Clucis's various business entities share a unity of ownership. *Id.* at 289. These preconditions to alter ego liability having been met as a matter of law, the Court

---

[77] ECF 80-1, at 14 ("Here, there are no facts in the record which show [the LLC] is insolvent.").

[78] ECF 88-7, ¶ 38 (citation omitted).

analyzes whether the LLC, the INC, and Clucis shared a unity of interest such that the Court may pierce the corporate veil.

Defendants argue in favor of their motion that the record is "utterly devoid of any factual allegations" tending to prove the LLC, the INC, and Clucis were alter egos.[79] They also offer some facts that purportedly support their position. For example, Defendants insist that the INC did not begin operations until the LLC ceased operating, the INC and LLC had different bank accounts (albeit at the same banks), the INC had its own credit cards and the LLC had none, the INC and the LLC had different tax identification numbers, Clucis was never paid personally with the proceeds of contracts awarded to the INC or LLC, and the 2016 and 2017 Policies were issued to the LLC only.[80]

As Travelers notes, many of these facts are immaterial because they neither account for each entity's actual financial practices relative to the other entities, nor debunk the overwhelming evidence of the LLC, the INC, and Clucis's comingling of funds.[81] They are a "mere scintilla" of evidence, and would persuade no reasonable jury to find in favor of Defendants on the alter ego issue. *Walker*, 911

---

[79]   ECF 80-1, at 10.

[80]   *Id.* at 10–12.

[81]   ECF 89, at 10.

F.2d at 1577 (cleaned up). Travelers also rightly points out that other facts—*e.g.*, that the INC did not begin operating until the LLC ceased operating—are belied by the record.[82]

In support of its bid for summary judgment, Travelers offers a breadth of evidence that the LLC, the INC, and Clucis shared a unity of interest and acted as alter egos of one another. As detailed above[83] and recapped briefly here, the evidence shows Clucis exploited the LLC and the INC as personal bank accounts, using business assets to pay for personal vacations and airfare, a mortgage, utilities bills, credit cards (which he used for personal and business purchases), and a $500,000 home[84] (the deed for which Clucis has since admittedly transferred into an asset protection trust for the benefit of his wife and daughter).[85] And Clucis used his personal bank accounts as business accounts, paying insurance premiums and workers' wages. As of the date of his deposition in this case, Clucis admitted—

---

[82] *See* ECF 88-7, ¶ 35 ("Cluci[s] admits that he was operating on behalf of the LLC on August 10, 2017 . . . which was after it was terminated on June 22, 2017, and coverage had been canceled [ ].").

[83] *See supra* Section I.C.

[84] *See id.*

[85] ECF 88-7, ¶ 47.

contrary to a representation in his summary judgment brief[86]—that he still used a credit card in the name of the LLC for personal expenses and the INC's business expenses, and conceded that he treated the LLC as himself.[87] On these facts, no reasonably jury could find corporate separateness between Clucis and the LLC or Clucis and the INC. *Christopher v. Sinyard*, 313 Ga. App. 866, 869 (2012) ("[I]f the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then . . . the court may disregard the corporate entity.").

As to the LLC and the INC, the evidence is even stronger. It shows that Clucis formed the INC and began to wind down the LLC in 2017, just as Travelers conducted the Pre-Discovery Audit and denied the LLC coverage based on the results of the initial audit. Also over the course of 2017, the LLC transferred approximately $3,000,000 to the INC. Defendants call these transfers "loans,"[88] but they do not point to any official loan documentation in the record supporting this characterization and do not represent that the INC intends to repay the now-

---

[86]   *Compare* ECF 88-7, ¶ 45 *with* ECF 80-1, at 11 ("[The INC] . . . held its own credit cards whereas [the LLC] had no corporate cards."); ECF 88-7, ¶ 43.

[87]   ECF 88-7, ¶ 43.

[88]   ECF 80-1, at 13.

insolvent LLC.[89] Clucis admittedly started the INC to generate income and "keep working" because he could not get insurance through the LLC,[90] and he admitted that he did not know when the business he was conducting switched from the LLC's affairs to the INC's. The evidence shows that, all the while, the LLC's employees would work on INC contracts, and vice versa.[91] Under these facts, the INC was nothing more than the LLC's and Clucis's "business conduit." *Baillie Lumber Co.*, 279 Ga. at 289. Any gaps in the record because Clucis "just did not care about paperwork" do not shield the INC from the LLC's liability considering the undisputed record evidence that the two companies shared a unity of interest.[92] No reasonable jury would find otherwise.

---

[89]  *Id.* Defendants argue that, under O.C.G.A § 14-11-310, single member LLCs are not required to hold formal meetings, take votes, or memorialize corporate meetings and decisions. ECF 80-1, at 13. But as Travelers notes, Section 310 does not exempt LLCs from their legal obligation to maintain copies of financial statements and tax returns under O.C.G.A. § 14-11-313(1). ECF 89, at 14.

[90]  ECF 88-7, ¶ 33. Clucis started the INC on January 3, 2017, and dissolved the LLC on January 9, months *before* Travelers sent him a notice of noncooperation on June 22 and a notice of cancellation on June 23. As a result, the Court questions how Clucis could have known that the LLC would be ineligible for insurance at the time he terminated it and registered the INC.

[91]  *See supra* Section I.C.

[92]  *Id.* ¶ 39.

On this record, Travelers' summary judgment motion is granted as to its alter ego claim. Defendants' summary judgment motion is denied. Accordingly, Travelers may pierce Defendants' corporate veils and recover from all Defendants, including Clucis, for the LLC's liability in contract.

## C.      Unjust Enrichment

Travelers also pled a claim for unjust enrichment against all Defendants. Defendants move for summary judgment as to this claim. "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery . . . [that] applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Tidikis v. Network for Med. Comms. & Research, LLC*, 274 Ga. App. 807, 811 (2005). Unjust enrichment is a claim in equity. *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1998). "It is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518–19 (11th Cir. 1994); *see also* O.C.G.A. § 23-1-4 ("[E]quity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law.").

Because Travelers has proven the LLC's breach of contract as a matter of law and is entitled to recover from all other Defendants under an alter ego theory of liability, equity is satisfied. Travelers' claim for unjust enrichment is accordingly

dismissed as moot. Defendants' summary judgment motion is likewise denied as moot as to Travelers' unjust enrichment claim.

### III.    Conclusion

Travelers' summary judgment motion [ECF 79] is **GRANTED**, and Defendants' cross-motion for summary judgment [ECF 80] is **DENIED**. Travelers' unjust enrichment claim is **DISMISSED as moot**. Travelers is permitted to recover damages from any of Defendants under an alter ego theory of liability. The Clerk is **DIRECTED** to enter judgment against Defendants, jointly and severally, and in favor of Travelers in the amount of $2,011,316, and to close the case.

**SO ORDERED** this 30th day of September, 2022.

Steven D. Grimberg
United States District Court Judge